UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| REYNALDO J. SERMONIA,<br><br>            Plaintiff,<br><br>    v.<br><br>AMAZON.COM, INC.,<br><br>            Defendant. | CASE NO. C04-2337JLR<br><br>ORDER |

## I. INTRODUCTION

This matter comes before the court on a motion for summary judgment (Dkt. # 10) by Defendant Amazon.com, Inc. ("Amazon"). Having considered the papers filed in support and in opposition, the court GRANTS Amazon's motion.

## II. BACKGROUND

Plaintiff Reynaldo Sermonia was born in the Philippines and identifies as a person of Asian decent. Mr. Sermonia worked in Amazon's Finance Department as a Director of Treasury from July 23, 2001 until his resignation on July 12, 2004. Amazon classifies the Director of Treasury job as a "Level 8" position, second in rank only to positions at the level of Company President, Senior Vice-President and Chief Executive Officer.

In his 2003 performance evaluation ("2003 Review"), Mr. Sermonia received a rating of 20 on a scale of 10 to 50. Bristow Decl., Exh. A. Supervisor Russel Grandinetti

ORDER – 1

based the rating on an assessment of Mr. Sermonia as compared to other individuals with similar levels of responsibility. Id. In addition to the numerical rating, Mr. Grandinetti provided various comments on the 2003 Review, including his opinion that Mr. Sermonia displayed good technical knowledge but needed to improve his leadership skills and initiative. Id. ("More than anything else, Rey needs to improve his bias for action and ability to be self-motivated in driving projects . . . .").

Again in 2004, Mr. Sermonia received a rating of 20 on a scale of 10 to 50. Bristow Decl., Exh. B. A rating of 20 corresponds with a definition of "underachieving: [p]erformance is below performance level of individuals with comparable levels of responsibility in some areas." Id. This time, Mr. Grandinetti's replacement, Jason Bristow, provided comments on the 2004 performance evaluation ("2004 Review"). Id. Mr. Bristow's comments to Mr. Sermonia include, in large part, the following: "[your] expertise is being underutilized, but you need to take it upon yourself to proactively use those skills"; "I'd like to see you drive projects proactively, rather than reactively"; "You, as a Director, should very much be driving this effort, without the need for micro-management;" and "I need you to step up – to take charge of things, and take ownership." Id.

Following both his 2003 and 2004 Reviews, Mr. Sermonia provided Amazon a written response, identifying specific comments made by his supervisors with which he disagreed. Bristow Decl., Exh. C; Sermonia Decl., Exh. B. Although Mr. Sermonia received similar comments and the same subpar rating in both Reviews, only his letter of March 24, 2004 includes an inquiry into whether race motivated his supervisor's rating. Mr. Sermonia points to the following series of allegedly retaliatory incidents that he contends stem from his March 24th letter:

ORDER – 2

(1) On April 7th, the day after Mr. Sermonia met with human resources ("HR") staff Laurie Arnold regarding his complaint of race discrimination, Mr. Bristow was "red-faced and angry" when he and Mr. Sermonia met to discuss his 2004 Review;

(2) That same day, Mr. Bristow informed Mr. Sermonia that he need not attend a meeting with Standard & Poor's (a financial services company) which Mr. Sermonia had previously planned on attending;

(3) On April 10th, a Saturday, Mr. Sermonia received an "urgent" email from Mr. Bristow, requesting information on a particular company's market value;

(4) On April 16th, Mr. Bristow did not invite Mr. Sermonia to interview a candidate for a cash management position within Mr. Sermonia's department;

(5) On April 28th, Mr. Bristow sent emails to Mr. Sermonia regarding Mr. Sermonia's ability to meet certain project deadlines.

(6) On May 10th, Mr. Bristow denied vacation leave, and instead suggested Mr. Sermonia request medical leave. Johnson Decl., Exh. I;

(7) On May 26th, while Mr. Sermonia was on medical leave, Mr. Bristow announced the appointment of an assistant treasurer with allegedly overlapping job responsibilities with Mr. Sermonia's position;

(8) On June 7th, when he returned from leave, Mr. Sermonia felt ostracized by his coworkers, which he says continued until June 17th when he took additional medical leave.

In addition to this series of allegedly retaliatory events, Mr. Sermonia contends that a shift in the office make-up occurred following Mr. Bristow's arrival in July 2003. Specifically, Mr. Sermonia alleges that Amazon replaced up to three employees of minority status in his department with new Caucasian hires. Sermonia Decl. ¶ 3.

Mr. Sermonia submitted his resignation to Amazon on July 12, 2004 (effective July 14, 2004) after allegedly consulting with his doctor and a psychologist. Mr. Sermonia filed this suit alleging that Amazon created a hostile work environment and retaliated against him in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000(e), *et seq.* ("Title VII"), and the Washington Law Against Discrimination, RCW § 49.60 ("WLAD"). Mr. Sermonia also brings state common law claims of negligent

ORDER – 3

supervision and negligent infliction of emotional distress. Amazon now moves for summary judgment on all claims.

## III. ANALYSIS

### A. Retaliation Claim

The court analyzes a summary judgment motion on a Title VII claim under the burden-shifting framework of McDonnell Douglas Corp. v. Green, 411 U.S. 792 (1973). To withstand summary judgment on a retaliation claim, Mr. Sermonia must establish a prima facie case of retaliation. To make out a prima facie case, Mr. Sermonia must show that he engaged in a protected activity and that Amazon took adverse employment action against him because of it. Ray v. Henderson, 217 F.3d 1234, 1240 (9th Cir. 2000); Washington v. Boeing Co., 19 P.3d 1041, 1049 (Wash. Ct. App. 2000). Under both WLAD and Title VII, the plaintiff must establish a causal link between the protected activity and the adverse employment action. Ray, 217 F.3d at 1240; Washington, 19 P.3d at 1049 (causal link is met where retaliation is a "significant factor" behind adverse employment action). If Mr. Sermonia establishes a prima facie case, the burden shifts to Amazon to show non-retaliatory reasons for the adverse action. If Amazon satisfies its burden, then the burden shifts back to Mr. Sermonia to show that Amazon's reasons are mere pretext. McDonnell Douglas, 411 U.S. at 802-05.

The court assumes without deciding that Mr. Sermonia satisfies the first element of a prima facie case of retaliation. Mr. Sermonia engaged in a protected opposition activity if he reasonably believed that the conduct he opposed (here, race discrimination) constituted a violation of Title VII or WLAD. Moyo v. Gomez, 32 F.3d 1382, 1384-85 (9th Cir. 1994) (construing Title VII); Kahn v. Salerno, 951 P.2d 321, 332 (Wash. Ct. App. 2000) (construing WLAD). Even an erroneous belief – in law or in fact – that an employer has engaged in unlawful discrimination may be reasonable if made in good faith. Moyo, 32 F.3d at 1385-86. In support of his claim that he was engaged in a

ORDER – 4

statutorily protected activity, Mr. Sermonia cites his March 24th letter and an email of April 9, 2004 in which he communicated to HR employee, Ms. Arnold, about his perception that white employees held higher-level positions and that Amazon was hiring Caucasians to replace minority employees.  On Mr. Sermonia's facts, the court assumes that Mr. Sermonia, in good faith, lodged his complaints about what he perceived as unlawful race discrimination.  See Ray, 217 F.3d at 1240 n.3 (making an informal complaint of discrimination to a supervisor was a protected activity); Kahn, 951 P.2d at 332 (informal complaints regarding an arguable violation of WLAD was protected activity).

Even if the court assumes that Mr. Sermonia engaged in a protected activity, his prima facie case fails because he cannot show that he suffered an adverse employment action under either Title VII or WLAD.  To be sure, what constitutes an adverse employment action can encompass a wide array of disadvantageous changes in the workplace.  See Ray, 217 F.3d at 1240-43 (summarizing a span of employer decisions that constitute adverse employment actions, including demotion, change in benefits, dissemination of unfavorable job references, etc.); Kirby v. City of Tacoma, 98 P.3d 827, 833 (Wash. Ct. App. 2004) (looking to federal case law regarding adverse employment actions).  At a  minimum, however, the employer's adverse act must be of the sort reasonably likely to deter employees from engaging in the protected activity.  Ray, 217 F.3d at 1243. Against this backdrop, the court considers whether the acts of Mr. Bristow or other Amazon employees constitute adverse employment actions.[1]

---

[1] By way of summary, Mr. Sermonia alleges that his coworkers ostracized him and that Mr. Bristow was "red faced and angry" on one occasion, excluded Mr. Sermonia from a meeting with Standard & Poor's, sent an "urgent" email on a Saturday, failed to invite Mr. Sermonia to participate in an interview, communicated with Mr. Sermonia regarding the urgency of various project time-lines, denied vacation leave when he thought medical leave would be more appropriate, and announced a new position within the department while Mr. Sermonia was out of the office.

ORDER – 5

First, the court is not persuaded that expressions of anger and frustration by Mr. Bristow in the context of a meeting with Mr. Sermonia regarding his 2004 Review rise to the level of an adverse employment action. See, e.g., Kirby, 98 P.3d at 833 (Wash. Ct. App. 2004) ("yelling at an employee . . . is not an adverse employment action") (internal citations omitted); Harris v. City of Seattle, 315 F. Supp. 2d 1112, 1125 (W.D. Wash. 2004) (supervisor pressuring an employee to resign was not adverse employment action). Similarly, Mr. Sermonia's experience of ostracism by his coworkers for a span of 10 days is not actionable. Brooks v. City of San Mateo, 229 F.3d 917, 929 (9th Cir. 2000) ("Because an employer cannot force employees to socialize with one another, ostracism suffered at the hands of coworkers cannot constitute an adverse employment action.").

Likewise, Mr. Bristow fails to show that he suffered an adverse employment action when Mr. Bristow excluded him from participating in the cash management position interview or in the meeting with Standard & Poor's. As to the interview, the court finds unavailing Mr. Sermonia's allegation that Mr. Bristow's act was somehow retaliatory given Mr. Sermonia's own testimony in which he states that he could not recall whether he had ever participated in past interviews of candidates for particular positions within the department. Johnson Decl., Exh. A at 52. Notably, it does not appear from the record that Mr. Sermonia even supervised anyone within his department. Bristow Decl., Exh. A.    As to exclusion from the Standard & Poor's meeting, Mr. Sermonia testifies that he had no prior working relationship with the company, save for telephone correspondence on an unrelated matter. Johnson Decl., Exh. A at 40-43. Amazon produces undisputed evidence of an email from Mr. Bristow in which Mr. Bristow indicates to Mr. Sermonia that he should save his time and work on other projects. Bristow Decl., Exh. D. ("I'm sure your time could be better spent on other projects, so you don't need to join the meeting today at 1:30 – It's just a commercial call anyway – thanks."). Mr. Sermonia responded with, "Will do." Id. Even setting aside the

ORDER – 6

trivial nature of these events, Mr. Sermonia fails to provide any evidence of how Mr. Bristow's exclusion of him from the interview or meeting in any way impacted his status at Amazon.  See Strother, 79 F.3d at 869 (exclusion from numerous meetings, seminars, and positions of responsibility was adverse employment action where plaintiff provided evidence that inclusion in such events, by contract, would have made her eligible for salary increases).

      Mr. Sermonia also fails to show how Mr. Bristow's Saturday email or other work-related correspondence rises to a level of an adverse employment action.  It is undisputed that the Saturday email request for a company's market value fell within Mr. Sermonia's expertise.  Johnson Decl., Exh. A at 47.  The court finds it inconsequential that the request came on a Saturday given Mr. Sermonia's testimony that, as a high-ranking Amazon employee, he occasionally worked weekends.  Johnson Decl., Exh. A at 46.  Notably, Mr. Sermonia does not claim that he faced a deluge of new work assignments, only that this particular email was "surprising" given that Mr. Bristow requested a company's market cap when the stock market was closed.  Id.  Similarly, Mr. Bristow's correspondence with Mr. Sermonia regarding project time lines, for which Mr. Sermonia unquestionably had responsibility, cannot constitute an adverse employment action.  Indeed, Mr. Sermonia testifies that he offered to complete the projects on an expedited time frame of four weeks, even though Mr. Bristow originally offered that Mr. Sermonia could take a "few months."  Johnson Decl., Exh. A at 56, 111-112.  Even if the court construes Mr. Bristow's actions as putting undue pressure on Mr. Sermonia to complete his work, such conduct does not rise to a level of an adverse employment action.  Indeed, even constant monitoring of an employee, Schaulis v. CTB/McGraw-Hill, Inc., 496 F. Supp. 666, 675 (N.D. Cal. 1980), and incessant criticism of an employee's work, Kortan v. California Youth Auth., 217 F.3d 1104, 1112 (9th Cir. 2000), do not constitute adverse employment actions.

ORDER – 7

The court is likewise unpersuaded that Mr. Bristow's denial of vacation time in favor of Mr. Sermonia requesting medical leave rises to the level of an adverse employment action. Mr. Sermonia had requested time off because he was experiencing work-related stress. Johnson Decl., Exh. I. ("FYI, because I have been experiencing a lot of stress here at work during the last month or so and have been seeing my Doctor, I plan to take a two week vacation to rest . . ."). In response, Mr. Bristow indicated that he thought vacation time was inappropriate when Mr. Sermonia had several projects outstanding, but suggested that if he needed to, Mr. Sermonia could request medical leave through the appropriate HR channels. Id. Mr. Sermonia seemingly argues that the denial of vacation was unfair because he had not heard of other such denials and because he "felt that there was really no difference between a vacation request and a medical leave." Johnson Decl., Exh. A at 118. Mr. Sermonia does not offer any evidence to show that vacation time was granted (or denied, for that matter) to other employees. In any event, denial of vacation time, particularly with an offer to accommodate Mr. Sermonia's request via medical leave, does not amount to an adverse employment action. See Brooks, 229 F.3d at 930 (denial of plaintiff's vacation preference after she complained about sexual harassment was not an adverse employment action; city later accommodated her request by allowing her to switch dates with other employees).

Mr. Sermonia also alleges that Mr. Bristow posted a new position for an assistant treasurer position while he was on medical leave in retaliation for his complaint of discrimination. Mr. Sermonia asserts that the new position had significant overlap with his responsibilities, while at the same time conceding that the new position included functions assumed by another recently departed employee. Johnson Decl., Exh. A at 120, 122. Beyond his bare allegation, Mr. Sermonia does not provide the court with any evidence to substantiate his claim that Mr. Bristow siphoned off his job responsibilities in favor of a new hire or that his status at Amazon changed in any way. See Cromer-

ORDER – 8

Kendall v. District of Columbia, 326 F. Supp. 2d 50, 61 (D.D.C. 2004) (changes in work assignment or duties do not ordinarily constitute adverse employment action if unaccompanied by a decrease in salary or a change in work hours; rather, employee must adduce evidence of a significant change in employment status) (internal citations omitted).

In sum, the court concludes that Mr. Sermonia fails to show that any of the incidents involving Mr. Bristow or other Amazon employees rise to the level of an adverse employment action. In no instance does Mr. Sermonia provide evidence that he faced a disadvantageous change in workplace status, nor is the court persuaded that any of the incidents described would reasonably deter an employee from complaining of workplace discrimination. Because Mr. Sermonia fails to establish a prima facie case of retaliation, the court GRANTS Amazon's motion for summary judgment as to Mr. Sermonia's claim of retaliation under Title VII and WLAD.

**B.     Hostile Work Environment Claim**

Mr. Sermonia alleges that he was forced to resign in July 2004 because Mr. Bristow created a hostile work environment. Mr. Sermonia seems to allege that the harassment was both retaliatory in nature and based on his race. See Pl.'s Resp. at 5, 6. The Ninth Circuit has held that harassing an employee for engaging in protected activity is no different than harassment based on race or gender. Ray, 217 F.3d at 1245.[2] In either instance, the plaintiff must show that the alleged harassment was "sufficiently severe or pervasive" so as to alter the conditions of employment. Id. (citing Harris v.

---

[2] The court assumes without deciding that Washington courts, like the Ninth Circuit in Ray v. Henderson, would recognize a hostile work environment cause of action based on retaliatory animus. See Antonius v. King County, 103 P.3d 729, 735 (Wash. 2004) (noting that Washington courts turn to federal discrimination cases whose reasoning "further[s] the purposes and mandates of [the WLAD].").

ORDER – 9

Forklift Sys., Inc., 510 U.S. 17, 21 (1993)); Washington v. Boeing Co., 19 P.2d 1041, 1046-47 (Wash. 2000) (requiring hostile environment plaintiff to show that conduct was sufficiently severe and pervasive).

In determining whether a plaintiff meets this requirement, the court considers the totality of the circumstances, including "the frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating; or a mere offensive utterance; and whether it unreasonably interferes with an employee's work performance." Ray, 217 F.3d at 1245 (internal citations omitted); see also MacDonald v. Korum Ford, 912 P.2d 1052, 1058-59 (Wash. Ct. App. 1996) (employing same federal standard to hostile work environment claim). In Ray, for example, the plaintiff raised a genuine issue of harassment based on retaliatory animus where he provided evidence that for over a year following his complaint of sexual harassment, supervisors targeted him for pranks, yelled at him during staff meetings, called him a "liar," "troublemaker," and "rabble rouser," and otherwise made him the "object lesson about the perils of complaining about sexual harassment in the workplace" by broadcasting to coworkers that plaintiff's complaints led to the cancellation of beneficial employee programs. 217 F.3d at 1245.

Here, Mr. Sermonia falls far short of making a showing of severe or pervasive harassment, whether race-based or retaliatory in nature. In support of his hostile work environment claim, Mr. Sermonia points to the same incidents described in support of his retaliation claim. Pl.s' Resp. at 7 ("The conduct as previously stated ranged from unprecedented and unwanted emails to a denial of vacation. . . . Clearly, the described events were unwelcome . . . ."). Mr. Sermonia does not allege that he was subjected to anything that was physically threatening or humiliating, nor does he contend that Mr. Bristow uttered anything even subjectively offensive. Indeed, Mr. Sermonia's list of grievances regarding Mr. Bristow's conduct does not include a single reference to a comment involving race, nor any other statement or act that might infer retaliatory

ORDER – 10

animus, such as the pranks or name-calling at issue in Ray. Taken in the light most favorable to Mr. Sermonia, the facts point to nothing more than incidents commensurate with the demands of a typical job. Trujillo v. Univ. of Colo. Health Sciences Ctr., 157 F.3d 1211, 1214 (10th Cir. 1998) ("Normal job stress does not constitute a hostile or abusive work environment").

**C.     State Law Claims**

Mr. Sermonia also sues Amazon under state common law theories of negligent supervision and negligent infliction of emotional distress. As an initial matter, it appears that Mr. Sermonia has dropped his emotion distress claim as he fails to mention it in response to Amazon's motion. In any case, both Mr. Sermonia's emotional distress and negligent supervision claims fail because they are duplicative of his retaliation and hostile work environment claims. Francom v. Costco Wholesale Corp., 991 P.2d 1182, 1192 (Wash. Ct. App. 2000) (holding that the trial court properly dismissed emotional distress and negligent supervision claims as duplicative because both claims derived from the same set of facts as the plaintiff's employment discrimination claim); see also Herried v. Pierce County Transp., 957 P.2d 767, 771 (Wash. Ct. App. 1998) (holding that negligent supervision claim was foreclosed by court's ruling on discrimination claim: "[s]ince [plaintiff] has not produced proof that she was the subject of gender-based discrimination she cannot claim that [defendant] was negligent in supervising an employee who allegedly discriminated."). Mr. Sermonia does not allege any non-discriminatory or non-retaliatory conduct on the part of Mr. Bristow to support a separate cause of action for negligence. Francom, 991 P.2d at 1192. Accordingly, the court GRANTS Amazon's motion for summary judgment as to Mr. Sermonia's state law claims.

ORDER – 11

## IV.  CONCLUSION

For the foregoing reasons, the court GRANTS Defendant's motion for summary judgment on all of Plaintiff's claims.  (Dkt. # 10).  This action is hereby dismissed.

Dated this 30th day of January, 2006.

/s/ James L. Robart

JAMES L. ROBART
United States District Judge

ORDER – 12